IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 2:09cr246 |
| ) | **Electronic Filing** |
| FREDDIE LAMONT CLECKLEY ) | |

**MEMORANDUM OPINION**
**and**
**ORDER OF COURT**

On August 5, 2009, Freddie Lamont Cleckley ("defendant") was indicted on three separate counts. He subsequently pled guilty to count one – possession with intent to distribute 5 grams or more of cocaine base; count two – possession of a firearm in furtherance of a drug trafficking crime; and count three – possession of a firearm by a convicted felon. He was sentenced to 188 months of imprisonment at count 1 and 120 months at count 3, to run concurrently. Additionally, he was sentenced to 60 months at count 2, to run consecutively, for a total term of 248 months of imprisonment. On July 17, 2019, this court entered an order granting defendant's unopposed motion to reduce sentence under the First Step Act. As a result, an amended judgment was entered reducing defendant's sentence to 151 months' imprisonment at count 1 and 120 months at count 3, to run concurrently, and 60 months at count two, to run consecutively, for a total term of 211 months of imprisonment. Thereafter, defendant filed a motion for compassionate release and several supplements thereto. The motion as supplemented is now pending before the court. For the reasons set forth below, the motion will be denied.

Section 601(b) of the First Step Act of 2018 made modifications to 18 U.S.C. § 3582, which previously authorized the Director of the Bureau of Prisons to file a motion with the court to modify a term of imprisonment that had already been imposed where "extraordinary and compelling reasons warrant[ed] such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). While

defendant indicates that the warden at FCI McDowell[1] denied his first request for compassionate release, Section 601(b) of the First Step Act authorized prisoners to present such motions for "compassionate release" directly to the court. Defendant has requested relief pursuant to such a motion.

In support of his motion, defendant identifies a number of what he believes are "extraordinary and compelling reasons" that support compassionate release. He asserts these grounds are unique and warrant relief under an individualized assessment. They include, but are not limited to, (1) his risk of severe illness and/or complications from COVID-19 due to his physical conditions of being obese and hypertensive; (2) his uncle being "seriously ill with bone cancer, cancer of the throat and kidney failure requiring dialysis". . . and defendant being "the only family member who can care for [him];" (3) defendant having served at least 144 months or 68% of his 248-month sentence and (4) defendant now being "unlikely to re-offend."

Defendant has failed to demonstrate that the court should exercise its discretion and grant the relief he seeks. The compassionate release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), and the need for the sentence to "reflect the seriousness of the offense, [] promote respect for the law, [] provide just punishment for the

---

[1] Defendant is no longer housed at FCI McDowell. The BOP website indicates he was transferred to FCI Petersburg Medium.

offense; [] afford adequate deterrence to criminal conduct; [and] protect the public from further crimes of the defendant." § 3553(a)(2)(A)-(C).

On balance, review of the available information pursuant to all the relevant factors does not warrant the relief defendant seeks. The court recognizes that the defendant's conditions of being obese and hypertensive likely place him at heightened risk for more severe complications from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (identifying obesity and *possibly high blood pressure*[2] as conditions which increase the risk for more severe complications and outcomes from COVID-19 disease). Thus, defendant does have conditions that could rise to the level of and provide a basis for the existence of extraordinary and compelling circumstances. But these conditions are not the sum-total of what the court must consider and the remaining information available meaningfully undercuts defendant's request for compassionate release.

First, the enhanced risks defendant faces within the institution must be balanced against the Bureau of Prisons' persistent and ongoing efforts to control outbreaks of the disease and implement measures that fulfill its statutory obligation to provide inmates with a safe environment and needed medical care. See https://www.bop.gov/coronavirus; accord United States v. Raia, 954 F.3d 594, 596 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.") (citing the BOP's

---

[2] The CDC distinguishes between pulmonary hypertension and "regular" hypertension. Id. While pulmonary hypertension (high blood pressure in the lungs) is listed as "a chronic lung disease that can make one more likely to get very sick from COVID-19," "regular" hypertension is only identified as *possibly* making an individual more susceptible to severe illness from COVID-19. Id.

COVID-19 Action Plan); United States v. Stallings, 2020 WL 3619071, *4 (M.D. Pa. July 2, 2020) (extensive efforts of BOP in preventing and controlling outbreaks of COVID-19 properly are considered in assessing its ability to manage an inmate's institutional and medical needs). That plan has involved modified operations since the initial outbreak of COVID-19, *see* BOP Modified Operations (https://www.bop.gov/coronavirus/covid19_status.jsp), along with refined measures that have been informed by collaboration with the Coronavirus Task Force, the Center for Disease Control and the COVID-19 Vaccine/Therapeutics Operation. https://www.bop.gov/coronavirus.

As of January 24, 2023, the BOP reports having 145,428 federal inmates in BOP-managed institutions and 12,836 in community-based facilities. Its staff complement is approximately 36,000. It has about 124 federal inmates and 195 BOP staff who have "confirmed" positive test results for COVID-19 nationwide. Currently, 46,646 inmates and 14,916 staff have recovered. There have been 312 federal inmate deaths and 7 BOP staff-member deaths attributed to COVID-19. Of the inmate deaths, 11 occurred while on home confinement. Id. These statistics appear to be the product of a reasonable response to and management of the risks posed by the relentless SARS-CoV-2 virus and its ongoing mutations.

More specifically, defendant was housed at FCI McDowell when he initially filed this petition.[3] However, according to the BOP website, he was transferred to FCI Petersburg Medium. FCI Petersburg Medium has only experienced two inmate deaths; it also had 260 inmates and 59 staff members who have recovered from COVID-19. Id. As of this date, the facility is not reporting any positive tests among inmates and only 2 positive tests among staff. Id. These circumstances further undercut the current and recurrent degree of risk which

---

[3] FCI McDowell is currently reporting 1 positive test among inmates and no positive tests among staff members. It also reports that 374 inmates and 70 staff members have recovered from COVID-19. Id.

4

defendant faces.  Cf. United States v. Henderson, -- F. Appx. --, --, 2021 WL 2156910, *2 (3d Cir. May 27, 2021) ("As the [District] Court explained, the outbreak of COVID-19 at FCC-Allenwood (where Henderson was housed) had been contained and, at the time of the decision, there was only 1 active case at the prison complex.  Thus, the risk of Henderson contracting COVID-19 was low and did not constitute an 'extraordinary and compelling reason' for a sentence reduction.").

Moreover, the BOP's modified operations plan has included a roll-out of the available vaccines to staff and inmates.  To date, the BOP has been able to administer over 346,202 doses of COVID-19 vaccine to both staff and inmates throughout the nation.  Id.[4]  After the administration of over 666 million doses of the available COVID-19 vaccines under the current emergency authorizations, the CDC continues to report that they are safe and effective.  See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html.  General side effects are minimal and minor and serious adverse reactions have been rare.  Id.  Indeed, anaphylaxis can be treated and successfully controlled shortly after injection through established medical protocol and the rare response of thrombosis with Thrombocytopenia Syndrome after receiving the J &J vaccine occurs in women at the rate of approximately seven cases per one million vaccinated individuals.[5]  Id.  The ongoing availability of the vaccines and their concomitant safety record further diminish the risk of severe sickness or death to all of the inmates under the BOP's care, including defendant.  Cf. https://www.bop.gov/coronavirus (noting the increase in control of the virus from the BOP's ongoing roll-out efforts); https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (noting the

---

[4]  This number does not include staff who received their vaccines through a community provider.  Id.
[5]  On May 22, 2022, the FDA limited the authorized use of the J & J vaccine to adult individuals who are unable to receive one of the MRA vaccines.  See https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine.

effectiveness of the approved vaccines against severe illness, complications and death among all age groups).

Against this backdrop, a decision to reject vaccination cannot displace the diminishing effects that the availability of the vaccines have had on the risks facing inmates such as defendant. Absent some compelling justification, the insidious decision to decline the vaccine when offered by the BOP negates an inmate's basic contention that release is warranted due to the existence of extraordinary and compelling medical reasons. See United States v. Jackson, 2021 WL 1145903, *2 (E.D. Pa., March 25, 2021) ("Where Jackson bears the burden of demonstrating her entitlement to relief, the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release.") (collecting cases in support); United States v. Austin, 2021 WL 1137987, *2 (E.D. Mich. March 25, 2021) ("A prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination."). Here, the record reveals that defendant has contracted COVID-19 on two separate occasions. Fortunately, he did not suffer severe illness.

In short, while defendant's medical conditions could create real risks of contracting COVID-19, and to a lesser degree, developing complications resulting in severe illness and/or death, the potential for these risks to materialize must be viewed through the lens of the BOP's ongoing response to the SARS-CoV-2 and its efforts to provide for defendant's medical needs. Viewed in this context, defendant has not met his burden of demonstrating extraordinary and compelling circumstances warranting his immediate release.

Even assuming for the sake of argument that defendant has presented medical conditions which substantially affect his vulnerability to severe complications in the event he contracts COVID-19, relief still is inappropriate after balancing the applicable § 3553(a) factors.

Defendant pled guilty to possession with intent to distribute 5 grams or more of cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.

Defendant had a substantial history of prior criminal conduct. His prior convictions include, but are not limited to, criminal conspiracy to deliver cocaine, possession with intent to deliver a controlled substance, indecent assault, aggravated assault, recklessly endangering another person, and driving under the influence.

Defendant likewise had a history of substance abuse involving both alcohol and prescription medications. He did not have a significant work history during the years preceding the instant offenses.

While defendant claims that he does not pose a danger to the safety of others or to the community, defendant's offense conduct, his prior criminal history and his personal background information provide strong justification for the sentence originally imposed. The offense was serious, there was and is a real need to deter others from engaging in similar criminal conduct, and there remains a meaningful need to protect the public from future crimes by defendant. Defendant's plan of re-integration (which contemplates moving in with his brother in lieu of serving additional time at a BOP institution) does not diminish these penological needs. In other words, defendant's early release plans do not displace the import of the many factors that support maintaining the sentence as originally imposed.

The guidelines were extensively considered in the court's sentencing of defendant. In light of the criminal conduct at issue and defendant's criminal history, the defendant's guidelines sentencing range was 188 to 235 months at counts one and three, and 60 months at count two, to run consecutively. In consideration of the guidelines, this court sentenced defendant to 188 months' imprisonment at count one and 120 months at count three, to run concurrently, and a

consecutive 60-month sentence at count two, for a total term of 248 months. Afterwards, as stated above, the defendant's sentence was reduced to 151 months' imprisonment at count 1 and 120 months at count 3, to run concurrently, and a term of 60 months at count two, to run consecutively, for a total term of 211 months of imprisonment – *a 37-month reduction*. Nothing has been presented to suggest that the offense conduct would somehow be treated less harshly today, especially after recognizing that the defendant's reduced sentence was *significantly below* the guideline range.

In short, a review and re-evaluation of the § 3553(a) factors continue to favor the original sentence, even when balanced against the increased risks presented by defendant's medical conditions vis-a-vis the current public health crisis and the more restrictive nature of ongoing confinement within the current institutional environment. Consequently, these reasons warrant the denial of defendant's motion for relief pursuant to the CARES Act as well.

For the reasons set forth above, the following order is entered:

**ORDER OF COURT**

AND NOW, this 1st day of February, 2023, upon due consideration of Freddie Lamont Cleckley's ("defendant") original *pro se* motion for compassionate release, as amended, his counseled motion for compassionate release, his *pro se* request for expedited consideration, his submitted medical records, and the parties' submissions in conjunction therewith, IT IS ORDERED that [128], [132], [137], [141] the motions for compassionate release as [133], [142], [143], [144], [145] supplemented be, and the same hereby are, DENIED.

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Katherine C. Jordan, AUS
       R. Damien Schorr, Esquire

       (*Via CM/ECF Electronic Mail*)

       Freddie Lamont Cleckley
       Register #30583-068
       FCI Petersburg Medium
       Federal Correctional Institution
       P.O. Box 1000
       Petersburg, VA 23804

       (*Via First Class Mail*)